UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMBER PRODUCTS
INSPECTION, INC.,

                Plaintiff,                                   Hon. Ellen S. Carmody

v.                                                  Case No. 1:10-CV-542

COASTAL CONTAINER CORP.
and BRENT PATTERSON,

                Defendants.
_____/


## OPINION

      This matter is before the Court on Timber Products Inspection, Inc's Motion for Summary Judgment, (dkt. #44), and Defendants' Motion for Summary Judgment, (dkt. #46). On August 13, 2010, the parties consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. *See* 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. (Dkt. #14). For the reasons articulated below, Plaintiff's motion is **granted in part and denied in part** and Defendants' motion is **granted in part and denied in part**.


## BACKGROUND

      The following allegations are contained in Plaintiff's complaint. (Dkt. #1). Timber Products is in the business of "inspecting, grading, and grade marking lumber and lumber products in accordance with established standards throughout the United States." All "lumber or lumber products

so inspected, graded and grade-marked bears one of Timber Products' registered trademarks." Plaintiff is also "engaged in the business of monitoring, inspecting, and auditing the treatment of non-manufactured wood packing material (NMWP)" in accordance with recognized standards. All such NMWP "so treated, inspected, and marked bears one of Timber Products' registered trademarks." Plaintiff asserts that given its long use, "the mark of Timber Products has acquired a secondary meaning associated by purchasers and users with Timber Products' services and denoting Timber Products' approval of treatment standards by the subscribers or members for products bearing the mark of Timber Products."

Defendants "manufacture and sell 'packaging solutions' consisting of standard corrugated packaging, foam fabrication, chipboard, packaging supplies and returnable containers to various customers to facilitate the sale and transport of the customers' products." Plaintiff alleges that "[i]n connection with its manufacturing and sales, Defendants have unlawfully and fraudulently duplicated and misappropriated the service mark and trademark of Timber Products on crates and other packaging products." Plaintiff further alleges that it has not authorized Defendants to use the Timber Products' service mark or trademark.

Plaintiff initiated this action on June 7, 2010, alleging numerous causes of action: (1) infringement of Timber Products' mark; (2) false designation of origin and dilution; (3) unfair competition; (4) trademark dilution; (5) common law infringement; and (6) violation of the Michigan Consumer Protection Act. Plaintiff seeks injunctive, declaratory, and monetary relief. Plaintiff and Defendants have both moved for summary judgment.

Defendants do not deny Plaintiff's general allegations. Defendants have submitted an affidavit executed by Bill Baumgartner, the Vice President of Corporate Sales for Coastal Container

Corp. (Dkt. #50, Exhibit A). In his affidavit, Baumgartner acknowledges that from approximately March 2009 through January 2010, Coastal Container manufactured shipping "kits" for one of its customers (GHSP Inc.) on which the Timber Products mark was printed. Baumgartner asserts that GHSP requested that Coastal Container "replicate" the shipping kits used by a previous packaging supplier, Norton Packaging, which displayed the Timber Products mark. Baumgartner concedes that Coastal Container simply copied the Norton Packaging design "in its entirety," including the use of the Timber Products mark. Defendants nevertheless assert that Plaintiff's motion for summary judgment is without merit and that summary judgment should instead be granted in their favor.

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by

admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*,

270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).


I.          **Defendant Brent Patterson**

          Plaintiff has initiated this action against Coastal Container and Brent Patterson, the President and owner of Coastal Container. Patterson moves for summary judgment on the ground that Plaintiff has failed to allege facts sufficient to subject him to personal liability.

          In its complaint, Plaintiff makes no specific allegations of wrongdoing against Patterson. Likewise, in its response to Patterson's motion for summary judgment Plaintiff does not assert any specific allegations of wrongdoing against Patterson, but instead appears to assert that personal liability as to Patterson is appropriate pursuant to a respondeat superior theory. Defendant Patterson, on the other hand, has submitted an affidavit in which he asserts that he "had no direct involvement in

developing the packaging for GHSP Corporation" and "had no knowledge that Coastal ordered a hand stamp so that it could replicate the heat treatment stamp on the packaging at GHSP's request." (Dkt. #47, Exhibit D). Plaintiff has submitted no evidence contradicting or calling into question the assertions contained in Patterson's affidavit.

In *Hair Associates, Inc. v. National Hair Replacement Services, Inc.*, 987 F.Supp. 569 (W.D. Mich. 1997), a trademark infringement action, the court examined whether the sole shareholders of National Hair Replacement Services (NHRS) could be held personally liable. The court rejected plaintiff's argument that NHRS's corporate form should be disregarded. *Id.* at 590. Specifically, the court concluded:

> The court rejects plaintiff's veil piercing claim. Although Hale and his wife are the sole shareholders of National, plaintiff has failed to establish any meaningful or regular disregard for corporate formalities which might render National the Hales' mere instrumentality for avoiding individual liability for their alleged illegal conduct. Indeed, if plaintiff were to prevail on its argument on these facts, any time a closely held corporation were found liable for trademark infringement, its shareholders would be liable as well. The Michigan courts provide greater protection for the separate existence of a corporation.

*Id.* (internal citations omitted).[1]

As for the argument that the shareholders could be held liable based on their conduct in the allegedly improper activity, the court found as follows:

> Plaintiff also argues that Hale is liable for his direct involvement in the infringing activity, rather than derivatively as a shareholder of National. "Employees of corporations are not shielded from individual liability under the Lanham Act solely because their actions were taken within the scope of their employment." Put simply, a corporate officer's active participation in infringing activity is sufficient to subject him or her to joint and several liability for trademark infringement with the corporation. There can be no doubt that Hale actively participated in the

---

[1] The Michigan authority that the court relied on to support this conclusion is still viable.

-6-

selection and use of the infringing marks; accordingly, he is jointly and
severally liable with National.

*Id.* at 590-91 (internal citations omitted).

Plaintiff has failed to argue or request that Coastal Container's corporate form should be disregarded and, moreover, has failed to allege any facts that would support such. While the Court agrees that Patterson *can* be held personally liable for conduct that constitutes "active participation" in the allegedly infringing activity, Plaintiff has submitted no evidence demonstrating that Patterson was actively involved in the conduct giving rise to this action. Patterson has, however, submitted unrefuted evidence that he had no involvement in the conduct giving rise to this action. Accordingly, Defendant Patterson's motion for summary judgment is granted and Plaintiff's motion for summary judgment as to its claims against Defendant Patterson is denied.

## II.          Infringement

In Count I of its complaint, Plaintiff alleges that Defendants' conduct "violates 15 U.S.C. § 1114(a)." It appears that Plaintiff is, in fact, invoking 15 U.S.C. § 1114(1)(a), which provides that "[a]ny person who shall, without the consent of the registrant. . .use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . .shall be liable in a civil action by the registrant for the remedies hereinafter provided. 15 U.S.C. § 1114(1)(a).

To prevail on its infringement claim, Plaintiff must first establish that it possesses a protectible mark. *See Citizens Banking Corp. v. Citizens Financial Group, Inc.*, 320 Fed. Appx. 341, 345-46 (6th Cir., Apr. 2, 2009). Registered trademarks are presumed valid, 15 U.S.C. § 1115(a), and,

-7-

therefore, protectible.  *See Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc.*, 871 F.2d 590, 593 (6th Cir. 1989).  Plaintiff has submitted evidence that the mark in question is registered.  (Dkt. #45, Exhibit F).  While it is possible to overcome this statutory presumption, Coastal Container has neither asserted nor submitted evidence that the mark in question is not valid or protectible.  Plaintiff has, therefore, established that the mark in question is protectible.

On the question of liability under § 1114(1)(a), Coastal Container concedes that it engaged in infringing conduct.  The dispute (at least as to this particular claim) concerns the relief to which Plaintiff is entitled.  Defendant concedes that Plaintiff is entitled to the imposition of a permanent injunction.  In this respect, the Court notes that the parties have stipulated to the entry of an injunction concerning this matter.  (Dkt. #59).  Defendant asserts, however, that Plaintiff is not entitled to the additional relief it seeks, namely monetary damages and attorneys fees.

### A.    Innocent Infringer

In support of its position that Plaintiff is only entitled to injunctive relief, Coastal Container asserts that because it did nothing more than print the mark in question "on packaging at its customer's request," it is properly considered an innocent infringer against which Plaintiff is entitled to only injunctive relief.  In support of this argument, Defendant relies on 15 U.S.C. § 1114(2)(A), which provides as follows:

> (2)    Notwithstanding any other provision of this chapter, the remedies given to the owner of a right infringed under this chapter or to a person bringing an action under section 1125(a) or (d) of this title shall be limited as follows:
>
> (A)    Where an infringer or violator is engaged solely in the business of printing the mark or violating matter for others and establishes that he or she was an innocent infringer or innocent violator, the owner of the right infringed or person bringing the action under section 1125(a) of this title

shall be entitled as against such infringer or violator only to an injunction against future printing.

To take advantage of this provision, however, Defendant must satisfy two separate requirements. Coastal Container must first establish that it is "engaged solely in the business of printing the mark or violating matter for others" and, moreover, that it is an "innocent infringer or innocent violator." Defendant satisfies neither provision.

First, Coastal Container is not "engaged solely in the business of printing the mark or violating matter for others." As Bill Baumgartner asserts, Coastal Container "is in the business of designing and manufacturing custom packaging solutions, including corrugated packaging." (Dkt. #47, Exhibit A). The Court is not persuaded by Defendant's argument that it satisfies this requirement because its infringing conduct consisted solely of printing the mark in question on boxes. This argument is contrary to the clear statutory language quoted above which concerns the nature of the alleged infringer's business not the alleged infringing activity. As Plaintiff recognizes, this provision is intended as a limited exception to protect newspapers, magazines, broadcasters, and other media from liability for the innocent dissemination of infringing material. *See, e.g., NBA Properties v. Untertainment Records LLC*, 1999 WL 335147 at *13 (S.D.N.Y., May 26, 1999).

Second, Coastal Container has not established that it qualifies as an "innocent infringer or innocent violator." The term "innocent infringer" or "innocent violator" is not defined by statute. Courts have concluded, however, that an infringer is "innocent" under this provision unless it (1) acted with knowledge of the infringement, or (2) acted with reckless disregard as to whether the material infringed the trademark owner's rights. *See, e.g., Gucci America, Inc. v. Hall & Assoc.*, 135 F.Supp.2d 409, 419-20 (S.D.N.Y. 2001). It has further been recognized that an infringer "cannot be naive and be like ostriches and put their heads in the sand and ignore obvious facts" and then later claim entitlement

to status as an "innocent infringer." *National Business Forms & Printing, Inc. v. Ford Motor Co.*, 2009 WL 3570387 at *6 (S.D. Tex., Oct. 30, 2009) (printer not entitled to innocent infringer status where it blindly relied on customers' representation that they were authorized to use the mark in question).  The photographs submitted by Plaintiff reveal that the Timber Products mark in question was accompanied by the familiar ® symbol, which signals that the mark in question is registered with the United States Patent and Trademark Office and, therefore, entitled to certain protections.  Despite the presence of this symbol and what it signifies, Bill Baumgartner concedes that Coastal Container made absolutely no effort to determine whether GHSP was authorized to use or employ the Timber Products mark.  The Court, therefore, discerns no basis for according "innocent infringer" status to Coastal Container.

### B.      Relief Available to Plaintiff

As discussed above, Coastal Container concedes that it infringed Plaintiff's mark and, moreover, that Plaintiff is entitled to the imposition of a permanent injunction.  Plaintiff, however, is also requesting monetary damages and attorneys' fees.  Before discussing the merits of Plaintiff's requests, it is first necessary to identify the relevant statutory scheme regarding such.

Three specific statutory provisions are implicated in circumstances, such as this, where a plaintiff establishes a violation of § 1114.  Section 1117(a) provides that the plaintiff may recover, subject to "principles of equity," the following: (1) actual damages, (2) defendant's profits, and (3) the "costs of the action."  15 U.S.C. § 1117(a).  This provision further provides that the Court "in exceptional cases may award reasonable attorney fees to the prevailing party."  *Id.*

Section 1117(b) provides that where a defendant violates § 1114(1)(a) through "use of a counterfeit mark," as defined in 15 U.S.C. § 1116(d), the court shall, absent extenuating circumstances:

> enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee, if the violation consists of:
>
> (1)   intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services; or
>
> (2)   providing goods or services necessary to the commission of a violation specified in paragraph (1), with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation.

15 U.S.C. § 1117(b).

Finally, § 1117(c) provides that "[i]n a case involving the use of a counterfeit mark (as defined in section 1116(d) of this title). . .the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages" in an amount up to $200,000 per counterfeit mark and up to $2,000,000 per counterfeit mark where the use of such was willful.  15 U.S.C. § 1117(c).

1.     Did Coastal Container Engage in Counterfeiting[2]

Plaintiff is requesting statutory damages under § 1117(c) as well as attorneys' fees under § 1117(b).  As the relevant statutory language provides, relief under these particular subsections is

---

[2]   Whether a mark is a "counterfeit" mark is a question of law, while the resolution of any disputes as to the facts on which such a determination is made is a task for the trier of fact.  *See, e.g., State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 720-21 (9th Cir. 2005) ("[t]he district court's determination that G & T's unauthorized use amounted to counterfeiting is a legal conclusion subject to de novo review").

available only upon a showing that the defendant used a counterfeit mark. In order to properly analyze whether Coastal Container used a counterfeit mark, the Court must first ascertain the appropriate definition of the term "counterfeit."

As previously noted, §§ 1117(b)-(c) both expressly provide that the term counterfeit is to be defined by reference to 15 U.S.C. § 1116(d), which defines a counterfeit mark as:

> (i)     a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or

> (ii)     a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36;

> but such term does not include any mark or designation used on or in connection with goods or services of which the manufacture[r] or producer was, at the time of the manufacture or production in question authorized to use the mark or designation for the type of goods or services so manufactured or produced, by the holder of the right to use such mark or designation.

Section 1116(d)(1)(B)(ii) applies only to circumstances in which a mark is alleged to be identical with or substantially indistinguishable from a "designation" that is protected under 36 U.S.C. § 220506, which concerns the exclusive right of the United States Olympic Committee to use certain words, phrases, and emblems. Thus, § 1116(d)(1)(B)(ii) is inapplicable in the present matter and the question, therefore, is whether the conduct in question satisfies the definition of counterfeit articulated in § 1116(d)(1)(B)(i).

Coastal Container asserts that its actions do not run afoul of this provision because it did not use the Timber Products mark in a manner for which the mark was registered. In support of this

-12-

argument, Defendant cites to *Coach, Inc. v. Asia Pacific Trading Co., Inc.*, 676 F.Supp.2d 914 (C.D. Calif. 2009), a case in which Coach, Inc. and Coach Services, Inc. sued several defendants for trademark infringement.

The plaintiffs in that case (Coach) were "in the business of manufacturing and marketing a variety of products, including handbags, watches, footwear, eyewear, and other personal accessories." *Id.* at 917. Coach owned and used several trademarks in connection with these products, including the "CC Design" mark which had been registered with the United States Patent and Trademark Office for use on sunglass cases and eyeglass cases. *Id.* at 917, 923 n.4. Coach alleged that one of the defendants (Sunglass Experts, Inc.) "was importing, promoting and selling sunglasses that bore exact reproductions of Coach's 'CC Design' mark." *Id.* at 918. Coach (like Timber Products) sought to recover statutory damages under § 1117(c) on the ground that Sunglass Experts used a "counterfeit" mark.

Sunglass Experts did not dispute that they used an infringing mark on their sunglasses, but instead argued that because its sunglasses did not use a 'counterfeit mark' as that term is properly defined by § 1116(d), Coach was not entitled to statutory damages under § 1117(c). Specifically, Sunglass Experts argued that because Coach did not register its "CC Design" mark for use on sunglasses, the use by Sunglass Experts of the "CC Design" mark on its sunglasses (while constituting infringement) did not constitute use of a *counterfeit* mark. The court agreed, concluding:

> The evidence before the Court indicates that Plaintiffs' "CC Design" mark was not registered for use on sunglasses, and Plaintiffs do not contend otherwise. Accordingly, the mark used by Defendant on its "CC" products does not qualify as a "counterfeit mark" under § 1117(c)'s provision for statutory damages.

*Id.* at 923.

This conclusion is consistent with other authority.  *See, e.g., G & T Terminal*, 425 F.3d at 721 (finding that a mark is "counterfeit" under § 1116(d) only if the plaintiff's mark "was registered. . .for use on the same goods to which [defendant] applied the mark").  This conclusion is consistent with that articulated in a leading treatise on trademark law:

> This definition of "counterfeit" [i.e., the definition articulated in § 1116(d)] reaches only cases in which the counterfeit mark is used in connection with the same goods or services as those for which the mark is registered on the Principal Register and is in use.  Thus, if the mark REGIS is registered only for pens and pencils, while the trademark owner might well have a civil remedy against the unauthorized use of REGIS on writing paper, such a use is not a "counterfeit."  Congress wished to discourage "boilerplate" charges of counterfeiting in ordinary trademark infringement suits and encouraged the assessment of attorney fees for frivolous counterfeiting allegations.

4 McCarthy on Trademarks and Unfair Competition § 25.15 (4th ed. 2011).

The evidence submitted by Plaintiff reveals that the mark in question is registered "for testing and grading of building materials, other than metal plate connected wood trusses."  (Dkt. #45, Exhibit F).  Defendants argue that because they did not use or display the mark in question on "building materials," their use is not properly considered counterfeiting.  The Court agrees.  The evidence submitted by both Timber Products and Coastal Container supports this conclusion.  On the other hand, Plaintiff has not submitted evidence that the corrugated boxes on which the infringing mark was placed are properly characterized as "building materials."

Plaintiff has submitted an affidavit executed by Todd Greer, Vice President of Timber Products, Inc.  (Dkt. #45).  In his affidavit, Greer asserts that "Timber Products is in the business of inspecting and auditing lumber and lumber products. . .to subscribers under the auspices of the American Lumber Standards Committee ("ALSC") and the ALSC non-manufactured wood products ("NMWP") Enforcement Regulations and the requirements of the International Plant Protection

Convention ("IPPC") Guidelines for Regulation of Non-Manufactured Wood Packing In Use For Transport of Commodities throughout the United States."  Greer further asserts that "Timber Products contracts with users such as Norton Packaging who thus become a subscriber to the Quality Auditing Program for NMWP of Timber Products."  According to Greer, "[u]nder its contract with subscribers, Timber Products verifies that each subscriber has treated the NMWP in accordance with the requirements of the ALSC program."  As Defendant correctly observes, however, the corrugated boxes in question are not considered a non-manufactured wood packaging material, but rather constitute a paper product which falls outside the description offered by Todd Greer.  (Dkt. #51, Exhibit F; Dkt. #52).

Plaintiff counters this authority and analysis by arguing that even if Coastal Container was not placing the mark on building materials, it was nevertheless placing the mark on containers in which building materials were placed, thus constituting counterfeiting activity.  The Court recognizes that there exists authority which supports the proposition that a defendant can be found to have engaged in counterfeiting where it transports goods which themselves are not labeled with an infringing mark, but are instead transported in a container on which a particular mark is placed.

For example, in *General Electric Co. v. Speicher*, 877 F.2d 531 (7th Cir. 1989), the court found that a manufacturer (Speicher) engaged in counterfeiting despite the fact that he did not place the mark in question on his products.  In that case, Chrysler agreed to purchase from Tools and Abrasives, Inc. (T&A), an industrial distributor, a particular industrial cutting tool.  *Id.* at 533.  Chrysler expressly specified that the tools in question must be manufactured to the same specifications of a particular tool manufactured by General Electric (GE).  *Id.*  T&A purchased from Speicher the cutting tools which it supplied to Chrysler.  *Id.* at 532-33.  The tools which Speicher manufactured for T&A were not

manufactured to the requisite specifications.  *Id.* at 533.  However, in an attempt to insinuate that the tools in question were of sufficient quality, Speicher shipped the tools in authentic General Electric boxes.  Chrysler eventually realized that the tools it purchased from T&A neither originated from GE (as it believed) nor manufactured to the same specifications of the equivalent General Electric tool.  General Electric eventually learned of this situation and initiated legal action against Speicher.  *Id.*

While General Electric prevailed on certain claims, the district court found that Speicher's action did not constitute counterfeiting under § 1114(1)(a).  *Id.* at 533-34.  The Seventh Circuit disagreed, finding no difference between Speicher's conduct of placing non-GE tools in a genuine General Electric container and simply "making a reproduction of GE's trademark."  *Id.* at 534.  As the court recognized, "the purpose of trademark law is not to guarantee genuine trademarks but to guarantee that every item sold under a trademark is the genuine trademarked product, and not a substitute."  *Id.*

The Court, however, fails to discern how this or similar authority supports Plaintiff's argument in this matter.  Plaintiff asserts that by placing the mark in question on the corrugated boxes, Coastal Container "misrepresented that any wood product found within the packaging container had been properly treated and inspected by Timber Products and was in compliance with the standards of the IPPC." (Dkt. #45, Greer Affidavit).  The shortcoming with this argument, however, is that there is no evidence that the boxes in question contained or were loaded with any wood products or building materials.  Rather, the evidence reveals that the boxes (which were not required to be heat treated) were simply stapled to wooden pallets and used to transport automotive parts.  (Dkt. #47, Exhibit A; Dkt. #52).  Thus, there is no evidence that Defendant was improperly using Plaintiff's mark to imply that the boxes contained material that was required to be heat treated and that such had been accomplished

pursuant to Timber Products' standards.  In the Court's estimation, this distinguishes the current circumstance from that in *Speicher* and similar cases.  In sum, for the reasons articulated above, the Court finds that Coastal Container did not use a counterfeit mark or engage in counterfeiting as such defined by the relevant statute.

>    2.    Plaintiff is Unable to Recover under §§ 1117(b)-(c), but is not without Remedy

As previously noted, to obtain attorney's fees under § 1117(b) or statutory damages under § 1117(c), Plaintiff must first establish that Defendant used a counterfeit mark or engaged in counterfeiting.  Having failed to establish such, the Court concludes that Plaintiff is not entitled to attorneys' fees under § 1117(b) or statutory damages under § 1117(c).  This conclusion does not, however, leave Plaintiff without the ability to recover damages or attorneys' fees.

In its complaint, Plaintiff asserts that it is seeking "the full measure of damages under [§ 1117], including, but not limited to, Defendants' profits, all damages sustained by Timber Products, the costs of this action, statutory damages, treble damages, and prejudgment interest, together with reasonable attorney's fees."  In short, Plaintiff is requesting every type of damages available.  When questioned at hearing on this matter, Plaintiff indicated that to the extent it was forced to choose between recovering actual damages under 1117(a) or statutory damages under § 1117(c), its preference was to recover the latter.  While Plaintiff, for the reasons articulated above, is unable to recover statutory damages under § 1117(c) such does not preclude Plaintiff from seeking recovery under § 1117(a).  *See, e.g., U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1192 (6th Cir. 1997) (court recognized that where relief is unavailable under one provision of § 1117, due to a finding that the defendant did

not engage in counterfeiting, such does not preclude recovery of same type of relief under a different provision of § 1117).

As noted above, § 1117(a) provides that Plaintiff may recover its actual damages and Defendant's profits, as well as "reasonable" attorneys' fees. Plaintiff's submissions on the issue of damages, however, are woefully inadequate. Plaintiff has failed to submit evidence establishing that as a result of Defendant's infringing conduct it suffered any quantifiable damages. Moreover, while the Court recognizes that it is quite likely that Defendant earned some measure of profit from its activities involving the improperly marked corrugated boxes, Plaintiff has failed to establish the amount of any such profits or the extent to which such are attributable to Defendant's infringing conduct. Thus, the Court concludes that Plaintiff has failed to establish entitlement to actual damages under § 1117(a). With respect to attorneys' fees, however, the Court reaches a different result.

Attorneys' fees are recoverable under § 1117(a) in "exceptional" cases, defined as circumstances in which the infringement was "malicious, fraudulent, willful, or deliberate." *Audi AG v. D'Amato*, 469 F.3d 534, 550-51 (6th Cir. 2006). As discussed above, Defendant intentionally copied the Timber Products mark, which was clearly marked with the familiar ® symbol. As Bill Baumgartner conceded, despite the presence and significance of this symbol, Defendant made absolutely no effort to determine whether its customer was authorized to use or employ the Timber Products mark, but instead simply copied the mark in question and used it for an extended period of time without regard for Plaintiff's rights. In the Court's estimation, such epitomizes willful and deliberate infringement. *See, e.g., Audi AG*, 469 F.3d at 551 (court upheld award of attorneys' fees under § 1117(a) where defendant used the marks in question without authorization, despite knowing that authorization was required); *Coach Services, Inc. v. YNM, Inc.*, 2011 WL 1752091 at *5 (C.D. Cal., May 6, 2011)

("willfulness can be established by evidence. . .that the defendant willfully blinded himself to facts that would put him on notice that he was infringing another's trademarks, having cause to suspect it"). Accordingly, the Court finds that Plaintiff is entitled to recover attorneys' fees in this matter.

Plaintiff is only entitled, however, to recover "reasonable" attorneys' fees as determined by the Court in the exercise of its discretion. Accordingly, Plaintiff shall submit evidence by way of affidavits (and any necessary attachments thereto) detailing the attorneys' fees to which it believes it is entitled. The Court will review Plaintiff's submission and determine the amount of attorneys' fees to which Plaintiff is entitled. Plaintiff shall submit the necessary evidence no later than 7 days after the date of this Opinion and Order. Failure to timely submit the requested evidence will result in the denial of Plaintiff's request for attorneys' fees.

### III.  False Designation of Origin and Dilution

In Count II of its complaint, Plaintiff asserts that Defendants' conduct "violates 15 U.S.C. §[§] 1125(a) and (c), entitling Timber Products to injunctive relief as provided by 15 U.S.C. § 1116(a)." Section 1125(a) and 1125(c) describe two separate and distinct harms or claims, each of which the Court will address separately.

1.  False Designation

15 U.S.C. § 1125(a), which addresses "false designation" claims, provides, in relevant part, that "[a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of

fact, which. . .is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person. . .shall be liable in a civil action."

As several courts have recognized, analysis of claims under 15 U.S.C. § 1114(1)(a) and 15 U.S.C. § 1125(a) are "identical."  *See, e.g., National Association of Realtors v. Champions Real Estate Services, Inc.*, 2011 WL 3678722 at *5 (W.D. Wash., Aug 22, 2011); *Birmingham v. Mizuno USA, Inc.*, 2011 WL 1299356 at *5 (N.D.N.Y., Mar. 31, 2011); *Mamiya America Corp. v. Huayi Brothers, Inc.*, 2011 WL 1322383 at *3 (E.D.N.Y., Mar. 11, 2011).  As discussed above, Coastal Container concedes liability under § 1114(1)(a) and has agreed to the imposition of injunctive relief. Accordingly, as to this claim, Plaintiff's motion for summary judgment is granted and Defendants' motion for summary judgment is denied.


### 2.    Trademark Dilution

Section 1125(c) provides, in part, that "[s]ubject to the principles of equity, the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness, shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury."

While "[t]raditional trademark infringement protects mark owners and consumers from uses of the same or similar marks that cause *confusion* among potential customers. . .the object of

[trademark] dilution is to protect the 'distinctive quality' of the trademark" irrespective of whether there exists any likelihood of consumer confusion.  David Welkowitz, Trademark Dilution 4-5 (BNA Books, 2002); *see also*, *Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 801 (6th Cir. 2004) ("dilution law, unlike traditional trademark infringement law. . .is not based on a likelihood of confusion standard, but only exists to protect the quasi-property rights a holder has in maintaining the integrity and distinctiveness of his mark").

Section 1125(c) articulates two distinct types of trademark dilution.[3]  Dilution by blurring occurs when "the similarity between a mark or trade name and a famous mark. . .impairs the distinctiveness of the famous mark."  15 U.S.C. 1125(c)(2)(B).  Dilution by tarnishment occurs when "the similarity between a mark or trade name and a famous mark. . .harms the reputation of the famous mark."  15 U.S.C. 1125(c)(2)(C).  While not stated expressly, it appears that Plaintiff is asserting a dilution by tarnishment claim.  Plaintiff's apparent failure to clearly state the nature of its dilution claim is of little consequence, however, as the test to prevail on either form of dilution claim is the same.

To prevail on its dilution claim, Plaintiff must satisfy the following test.  Plaintiff must first establish that its mark is both "famous" and "distinctive."  *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 628 (6th Cir. 2003).  Plaintiff must then establish that Defendant's use of the mark in question was (1) "in commerce;" (2) begun subsequent to the senior mark becoming famous; and (3) caused dilution of the distinctive quality of the senior mark.  *Id.*

Plaintiff has not argued that its mark is famous or distinctive and has failed to submit any evidence that would support such a conclusion.  As to this particular claim, therefore, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

---

[3]  The term "dilution" used to be defined in 15 U.S.C. § 1127, but this definition was removed from the statute in 2006.

**IV.**          **Unfair Competition**

In Count III of its complaint, Plaintiff asserts that Defendants' conduct "constitutes unfair competition under Michigan law." As discussed below, the Court concludes that Defendants are entitled to summary judgment as to this claim.

In *Boron Oil Co. v. Callanan*, 213 N.W.2d 836 (Mi. Ct. App. 1974), Boron Oil sued Callanan for unfair competition, after the latter changed the name of his real estate company to Boron Realty. *Id.* at 837. The trial court dismissed the action for failure to state a claim, a decision which the Michigan Court of Appeals affirmed. The court framed the issue before it as "[w]hether the plaintiff's trade name has become so identified with its business that use by defendant, not in any way in competition with plaintiff, would amount to an unfair business practice." *Id.* In answering this question, the court first observed that "[o]rdinarily, one simply cannot be found guilty of unfair competition when the facts indicate no competition." *Id.* at 838. The court recognized that there existed an exception "where an outstanding and widely known name, made valuable by the owner. . .is pirated." *Id.*

This notion has subsequently been recognized by the Sixth Circuit. *See Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 635 (6th Cir. 2001) ("under Michigan law, generally there can be no unfair competition when the parties are not competitors in the marketplace. . .[t]he exception to that rule occurs when the party has 'an outstanding and widely known name made valuable by the owner' and the name is pirated by another party") *abrogated on other grounds*, *Reed Elsevier, Inc. v. Muchnick*, 130 S.Ct. 1237 (2010); *see also*, *Veteran Medical Products, Inc. v. Bionix Development Corp.*, 2009 WL 891724 at *9 (W.D. Mich., Mar. 31, 2009) ("[i]n order to prove unfair competition [under Michigan law] there must be actual competition shown from specific instances or as a natural tendency of defendant's act").

The evidence submitted by the parties amply supports Coastal's position that it does not compete with or against Plaintiff. Accordingly, as to this particular claim, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

## V.          Trademark Dilution

In Count IV of its complaint, Plaintiff asserts that "Defendants' unauthorized duplication and use of and sale of packaging product with such mark is likely to cause confusion, mistake, and to deceive and constitutes a violation of 15 U.S.C. § 1125(a)." As discussed above, in Count II of its complaint, Plaintiff asserts that Defendants violated § 1125(a). As this claim is repetitive of that asserted in Count II of Plaintiff's complaint, such is dismissed as redundant.

## VI.          Common Law Infringement

In Count V of its complaint, Plaintiff asserts that Defendants' conduct "constitute[s] an infringement of Timber Products' common law rights in its service mark and an improper and unfair competition with Timber Products." To the extent that Plaintiff is asserting in this count a common law claim for unfair competition, such is addressed above. To the extent that Plaintiff is asserting a common law claim for infringement, the Court notes that Plaintiff has failed to identify any authority to support its argument that it is entitled to summary judgment on this claim. Plaintiff has failed to demonstrate that he is entitled, pursuant to this claim, to any relief beyond that articulated above. The Court, therefore, finds that Defendant is entitled to summary judgment as to this particular claim.

**VII.        Michigan Consumer Protection Act**

In Count VI of its complaint, Plaintiff asserts that Defendants "have engaged in deceptive trade practices, within the meaning and in violation of the Michigan Consumer Protection Act."  As discussed below, the Court concludes that Defendants are entitled to summary judgment as to this claim.

The Michigan Supreme Court has indicated that the Michigan Consumer Protection Act (MCPA) "provides protection to Michigan's consumers by prohibiting various methods, acts, and practices in trade or commerce."  *Slobin v. Henry Ford Health Care*, 666 N.W.2d 632, 634 (Mich. 2002).  As the *Slobin* court recognized, however, "the MCPA applies only to purchases by consumers and does not apply to purchases that are primarily for business purposes. . .if an item if purchased primarily for business or commercial rather than personal purposes, the MCPA does not supply protection."  *Id.* at 634-35.

Plaintiff has submitted no evidence that the conduct giving rise to this action involved purchases by consumers.  Instead, the evidence submitted makes clear that Defendant's alleged conduct involved business or commercial transactions.  The Court concludes, therefore, that as to this particular claim, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

**CONCLUSION**

For the reasons articulated herein, Timber Products Inspection, Inc's Motion for Summary Judgment, (dkt. #44), is **granted in part and denied in part**, and Defendants' Motion for Summary Judgment, (dkt. #46), is **granted in part and denied in part.**

Specifically, Defendant Brent Patterson's motion for summary judgment is granted and Plaintiff's claims against Defendant Patterson are dismissed.  With respect to Plaintiff's claim for trademark infringement, Plaintiff's motion for summary judgment as to liability is granted.  As discussed herein, Plaintiff is entitled to the injunctive relief to which the parties have already agreed, as well as reasonable attorneys' fees to be determined by the Court based upon its evaluation of the evidence to be submitted by Plaintiff no later than seven days after the date of this Opinion and Order.

With respect to Plaintiff's false designation claims, Plaintiff's motion for summary judgment is granted and Defendants' motion for summary judgment is denied.  With respect to the trademark dilution claim asserted in Count II of Plaintiff's complaint, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.  Count IV of Plaintiff's complaint, asserting a trademark dilution claim, is dismissed as redundant to the trademark dilution claim asserted in Count II of Plaintiff's complaint.  With respect to the remaining claims in Plaintiff's complaint, asserting claims of unfair competition, common law infringement, and violations of the Michigan Consumer Protection Act, Plaintiff's motion for summary judgment is denied and Defendants' motion for summary judgment is granted.

An Order consistent with this Opinion will enter.


Date:  October 25, 2011                              /s/ Ellen S. Carmody                       
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge